IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PATTERSON OIL CO., INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:15-cv-4089 |
| | ) |
| VERIFONE, INC., et. al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

Plaintiff Patterson Oil Co, Inc., a convenience store operator, alleges that Defendant Verifone, Inc. defectively designed and manufactured its V910 electronic payment servers, causing Patterson to suffer damages and lost revenue when Verifone breached its warranty obligations. Seeking damages on behalf of a similarly situated class, Patterson's complaint sets forth five claims: breach of express warranty, breach of the implied warranty of merchantability, failure of essential purpose and unconscionability, fraud, and unjust enrichment. [Doc. 1.] Before the Court is Verifone's motion for dismissal of these claims under Fed. R. Civ. Pro. 12(b)(6). [Doc. 11.] For the reasons discussed below, Verifone's motion to dismiss is granted in part and denied in part.

**I.  Background[1]**

---

[1] These facts appear in Patterson's original complaint. [Doc. 1.] For purposes of deciding Verifone's motion to dismiss, the Court accepts Patterson's factual allegations as true and construes them in the light most favorable to Patterson. *See Stodghill v. Wellston Sch. Dist.,* 512F.3d 472, 476 (8th Cir. 2008).

Verifone manufactures software and hardware used in electronic payment systems. One of the company's product lines, marketed as "Petroleum and Convenience Retail Solutions," consists of point-of-sale systems and related hardware that Verifone sells to gas stations and convenience stores. The line is then used by those businesses to process consumer payments.

Verifone regularly releases upgrades to its Petroleum and Convenience Retail Solutions line. In the 1990s, one of the line's primary products was the Ruby POS system, a modular payment device. In the mid-2000s, the company encouraged its customers to upgrade to the Ruby PLUS POS, a new system that included a Sapphire site controller, an electronic box that connects to the original Ruby POS and provides owners added data and features. To ensure its customers would comply with Payment Card Industry Data Security Standards (PCI DSS), Verifone then introduced electronic payment servers to connect to the Sapphire site controller and separate out credit card processing from other functions. The first such server, the V900, was released around 2007.

In 2010, to assist customer compliance with PCI DSS 2.0, Verifone introduced the V910 and V920, its second-generation electronic payment servers. The V910 is an electronic board designed to insert into the Sapphire site controller. Verifone marketed the V910 "directly to gas station and [convenience] store owners." [Doc. 1, p. 7, ¶ 27.] It also "worked with major oil companies . . . to promote the V910 to their branded retailers." [*Id.*, p. 7, ¶ 26.]

Verifone advertised the V910 as a "convenient" and "[l]ower cost alternative" to the V920, which, unlike the V910, operates as a standalone hardware product. [*Id.*, p. 8 ¶ 32-33.] A Verifone brochure stated that the V910 "delivers the same benefits as the V920 solution, without the additional hardware component." [*Id.*, p. 8, ¶ 34.] V910 software could also be updated remotely, saving customers "both time and money." [*Id.*, p. 8, ¶ 32.] The company further

2

Case 2:15-cv-04089-NKL   Document 35   Filed 10/19/15   Page 2 of 19

provided a technical specification sheet that claimed the V910 is "Highly Reliable" and "designed to withstand even the harshest environments." [*Id.*, p. 7, ¶ 28.]

Contrary to Verifone's representations, Patterson Oil alleges, Verifone knew or should have known that the V910 device was defectively designed and manufactured. The company "failed to adequately test the V910 inside the Sapphire site controller for any significant period of time," [*Id.*, p. 13-14, ¶ 62-63], even though the V900 product line "was unreliable and prone to failure when exposed to elevated temperatures or lack of air circulation." [*Id.*, p. 14, ¶ 65.] Verifone knew or should have known about this problem. A 2011 analysis by British Petroleum warned of overheating issues, and Verifone designed the V920 model with an active cooling system and front-facing ventilation holes. Yet Verifone designed the V910 to sit within the Sapphire site controller box with minimal air circulation. As a consequence of this defect, customers have complained on an Internet forum of high V910 failure rates. [*See id.*, pp. 10-13, ¶ 41-59.] Verifone knew or should have known about these failure rates because it has a customer service line to process reports, it sells its products through approved distributors, many of whom are also service technicians, it actively monitors the Internet forums, it learns about defects when customers invoke a product warranty, and because it has access to real-time data through the V910 system.

Verifone sold the V910 with a 13-month express limited warranty. The warranty states in part:

> Verifone warrants that each hardware Product shall be free from faulty workmanship and defective materials. . .
>
> If Verifone receives notice of defects, or substantial non-conformance to written documentation during the warranty period, Verifone will, at its option, repair, or replace the affected Products. Customer will pay expenses for return of such Products to Verifone. During the standard warranty period Verifone will return

3

ship repaired or replacement Products, except for Products returned to Customer from another country, at the expense of Verifone. Repair or replacement of a Product (or any part thereof) does not extend the warranty period for such Product.

The warranty further disclaims all other warranties and remedies:

THE ABOVE WARRANTIES . . . (III) ARE EXCLUSIVE AND NO OTHER WARRANTY, WHETHER WRITTEN OR ORAL, IS EXPRESSED OR IMPLIED. VERIFONE SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON INFRINGEMENT OF THIRD PARTY RIGHTS.

Patterson Oil alleges that the express limited warranty offers no value to purchasers of defective V910s. While a device is being repaired, the purchaser cannot accept credit cards and thus loses money by forgoing potential transactions. After the device is repaired, the purchaser is still saddled with a defectively designed product that is likely to fail again. And in many cases, Verifone fails to honor its warranty terms and has refused even to repair a defective V910; according to posts on an Internet forum, Verifone has repeatedly returned defective products mailed-in by customers, claiming an NFT (No Trouble Found) repair. Patterson Oil alleges that Verifone has "systematically abused the NFT process by claiming products were not defective without conducting sufficient testing to make this determination." [*Id.*, p. 19, ¶ 83.] On the Internet forum, a Verifone Product Support Engineer, Greg Taylor, has inquired into the issue, writing that "[t]here have been a lot of posts over the years about parts coming back from the Verifone repair center with No Problem Found as the result." [*Id.*, p. 19, ¶ 85.]

Patterson Oil, an operator of gas stations and convenience stores in central and western Missouri, installed V910s in six of its "Rush Hour" branded stores in November and December of 2011. The V910s in each location have failed. When a V910 failure occurred, Patterson Oil alleges, it contacted Verifone through a Verifone help line. Verifone then referred Patterson Oil

4

to its local distributor, Double Check, which then determined whether repair or replacement was covered by the Verifone express limited warranty. None of Patterson Oil's V910 failures have been covered by the limited warranty. At Patterson Oil's Pleasant Hill, Missouri location, a new V910 failed before installation was complete, and subsequently a replacement product failed four months later, in April 2012. Double Check serviced this failed V910 but Verifone did not repair or replace the device. As a result, Patterson Oil paid Double Check out-of-pocket to replace the V910. When the replacement failed in December 2013, Patterson Oil again paid Double Check out-of-pocket for the service visit and repair.

Patterson Oil therefore alleges that it suffered damages because it was forced to spend thousands of dollars on service visits and new devices and because it lost sales when its V910 devices were malfunctioning. Its Complaint contains five counts:

> I. Breach of Express Warranty
> II. Breach of Implied Warranty of Merchantability
> III. Failure of Essential Purpose
> IV. Fraudulent Misrepresentation and Omissions
> V. Unjust Enrichment

**II. Discussion**

Verifone argues dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) because Patterson Oil fails to state a claim upon which relief can be granted. Verifone further alleges that the fraudulent misrepresentation claim fails because Patterson Oil does not meet the Rule 9(b) heightened pleading standard.

**A. Count I, Breach of Express Warranty**

Verifone warranted the V910 to be free from faulty workmanship and defective materials, yet Patteron Oil alleges numerous failures of the V910s, suggesting faulty workmanship or defective materials. Nonetheless, Verifone argues that the breach of express

5

warranty count must be dismissed because Patterson Oil did not provide notice of the failed V910s and did not return the product for repair or replacement, as Verifone argues is required by the express limited warranty.

Under Missouri law, a buyer must show that he "notified the seller of the nonconformity" in order to assert an express warranty claim. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010). If he does not notify "within a reasonable time after he discovers or should have discovered any breach," the buyer is "barred from any remedy." Mo. Rev. Stat. § 400.2-607(3)(a). *See also Hope v. Nissan N.A.*, 353 S.W.3d 68, 91-92 (Mo. App. W.D. 2011) (notification to seller required to assert warranty claim). The bar for notification here is low. As contemplated by the Uniform Commercial Code and incorporated into Missouri law, notice "does not require any particular formality or detail as to the nature of the buyer's complaint." *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993). Rather, "[t]he content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched.*"* U.C.C. (U.L.A.) § 2–607 Comment 4 (1989).

Construed liberally in a light most favorable to Patterson Oil, its factual allegations demonstrate that the notice bar was met. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that courts accept a complaint's factual allegations as true in a motion to dismiss). Patterson Oil alleges that, when it experienced a V910 failure, it "first contact[ed] Verifone regarding the failure through a Verifone help line." [Doc. 1, p. 22, ¶ 99.] Patterson Oil also communicated on multiple occasions with Double Check, Verifone's authorized distributor and dealer in the region regarding its V910 failures. *See Kansas City*, 855 S.W.2d at 369 (finding that the defendant had notice where an intermediate seller notified its sales representative). These allegations suggest Verifone knew the transaction was troublesome

6

and thus they raise Patterson Oil's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Patterson Oil has alleged sufficient facts from which a jury could find notice has been given.

Verifone also argues that Patterson Oil's express warranty claim fails because it does not allege that the products were returned to Verifone for repair or replacement. Verifone maintains this was a requirement of the warranty and, if not complied with, there is no liability under the warranty.

The Verifone warranty states that "[i]f Verifone receives notice of defects . . . Verifone will, at its option, repair, or replace the affected Product." [Doc 1., p. 17, ¶ 75.] This language does not indicate VeriFore *required* a product mail-in, instead of mere notice, to trigger a warranty claim. While the warranty also states that "Verifone will return ship repaired or replacement Products"—thus suggesting the device has been mailed to Verifone in the first place—the language again does not indicate that Verifone would have no warranty obligation if this procedure was not used. To the extent the warranty language is open to multiple interpretations, it is ambiguous and not properly resolved on a motion to dismiss. *Olympus Ins. Co. v. AON Benfield, Inc.*, 711 F.3d 894, 898 (8th Cir. 2013) ("If the court determines that a contract is ambiguous, its interpretation then becomes a question of fact for the jury and the district court should not grant a motion to dismiss.")

Verifone's reliance on *Cambridge Eng'g, Inc. v. Robertshaw Controls Co.*, 966 F. Supp. 1509 (E.D. Mo. 1997) is not persuasive. *Cambridge* is an opinion issued following a non-jury trial, not an order on a motion to dismiss. Moreover, the limited warranty in *Cambridge* contains express language mandating product returns. The warranty there states that a "[b]uyer *shall* return, transportation prepaid, all defective materials." *Id.* at 1515 (emphasis added). The

7

*Cambridge* court therefore found this language to create a "necessary condition precedent" with which the plaintiff must comply before asserting a breach of warranty claim. *Id*. at 1524.

Because Verifone's express limited warranty does not plainly require a product mail-in, and because Verifone, according to the Complaint, refused to cover defects in the V910s after receiving notice of each failure, Patterson Oil has plead facts sufficient to maintain a claim for breach of express warranty.

Therefore, Verifone's Motion to Dismiss Count I is DENIED.

### B. Count III, Failure of Essential Purpose

Under Missouri law, a warranty "may limit or alter the measure of damages recoverable . . . as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." Mo. Rev. Stat. § 400.2-719(1)(a). Such limitation applies unless the "remedy fails of its essential purpose or is unconscionable." *Global Petromarine v. G.T. Sales & Mfg., Inc.*, 2010 WL 5257659, at *8 (W.D. Mo. Dec. 17, 2010). To determine whether a warranty is subject to a limitation of remedies, courts will consider "[a] plain interpretation of the contract language." *Id.*

Verifone argues that even if there is an enforceable warranty, "Verifone's only obligation is to repair or replace [the] defective board." [Doc. 12, p. 9.] Because Patterson Oil did not permit Verifone to repair or replace the defective products, Patterson Oil has no viable remedy for any alleged breach of the warranty.

Patterson Oil does not dispute that Verifone has limited the express warranty remedy to repair and replacement. Nevertheless, Patterson Oil maintains in Count III of its Complaint that the "limited warranty is unconscionable and fails of its essential purpose," and consequently

8

Patterson Oil is "entitled to recover all damages available under the Missouri Commercial Code."[2] [Doc. 1, p. 33, 34, ¶ 151, 156.]

The dispositive questions before the Court are whether Patterson Oil has sufficiently alleged that the express limited warranty (1) fails of its essential purpose and (2) is unconscionable, such that Patterson Oil is not bound by Verifone's limitation of remedy.

Under Missouri law, a limited remedy to repair or replace a product fails of its essential purpose when "the warrantor fails to correct the defect with a reasonable time." *Givan v. Mack Truck, Inc.*, 569 S.W.2d 243, 247 (Mo. Ct. App. 1978). *See also McCutcheon v. Cape Mobile Home Mart, Inc.*, 796 S.W.2d 901, 905 (Mo. Ct. App. 1990) ("where the warrantor fails to correct the defect within a reasonable period, the limited warranty of replacement or repair fails its essential purpose"). The defect is not corrected within a reasonable time when the product is replaced with another defective product or the warrantor otherwise refuses to provide an adequate replacement. *Johnsen v. Honeywell Int'l Inc.*, 2015 WL 631361, at *7 (E.D. Mo. Feb. 12, 2015) (denying a motion to dismiss when "[defendant] continued to replace the defective humidifiers with other defective humidifiers"); *R.W. Murray, Co. v. Shatterproof Glass Corp.*, 758 F.2d 266, (8th Cir. 1985) (holding that a limited warranty failed of its essential purpose when the seller replaced several defective glass panes but would not replace all the defective planes free of charge). Whether the remedy fails its essential purpose is a fact-intensive inquiry and "should be decided on a full evidentiary record." *Trinity Products, Inc. v. Burgess Steel, L.L.C.*, 486 F.3d 325, 332 (8th Cir. 2007) (*citing Bracey v. Monsanto Co.*, 823 S.W.2d 946, 949

---

[2] The Court uses Patterson Oil's caption for Count III, "Failure of Essential Purpose." However, the Court understands this Count to broadly attack Verifone's express limited warranty remedy as both failing its essential purpose and containing unconscionability.

9

(Mo. banc 1992). *See also Zimmerman v. Gen. Mills, Inc.*, 327 F.Supp. 1198, 1202 (E.D.Mo.1971)).

Similarly, unconscionability is a fact-intensive inquiry. Unconscionability is defined as "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *State of Missouri, Dept. Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc.*, 50 S.W.3d 273, 277 (Mo. banc 2001) (*quoting* Restatement (Second) of Contracts § 153 (1981)). Under Missouri law, "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Mo. Rev. Stat. § 400.2-302(2). A finding of unconscionability is therefore "to be based on evidence, rather than being decided on the pleadings." *Bracey*, 823 S.W.2d at 949. *See also Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 489 n.1 (Mo. banc. 2012) ("[Unconscionability] is a fact-intensive inquiry").

Verifone maintains that the express limited warranty did not fail of its essential purpose because "the facts as alleged by Patterson show that during the warranty period, a single V910 board at one of its nine stations failed, and that it was replaced the very same day." [Doc. 12, p. 10.] Yet Patterson Oil's complaint states that "[t]he V910's installed in each of the Rush Hour locations have failed," [Doc. 1, p. 22, ¶ 98], that it experienced three failed V910s at a single location, [Doc. 1, p. 23, ¶¶ 100-104], and that "Verifone has not covered by warranty the repair or replacement for any of the multiple V910 failures experienced by Patterson Oil," [Doc. 1, p. 23, ¶ 99.] Verifone alternatively argues that its warranty is not unconscionable because Patterson Oil does not show the existence of "high pressure tactics, fine print, or unequal bargaining

10

positions." [Doc. 29, p. 6.] Yet again, however, Patterson Oil's complaint offers facts to demonstrate that such factors may exist. *See* [Doc. 1, pp. 5-7, ¶¶ 19-26] (describing how Patterson Oil was a captive consumer, pressured by Verifone's oil industry partners and hamstrung by changing security protocols).

Consequently, it is premature to determine whether the limited remedy provided by Verifone failed its essential purpose and was unconscionable. Verifone's Motion to Dismiss Count III is DENIED.

### C. Count II, Breach of Implied Warranty of Merchantability

Verifone argues that Patterson Oil cannot maintain a claim for breach of implied warranty of merchantability because Verifone expressly and conspicuously disclaimed this warranty.

In its reply brief, Patterson Oil does not dispute that Verifone expressly disclaimed the implied warranty of merchantability in a manner valid under Missouri law. *See* Mo. Rev. Stat. § 400.2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous."). Instead, Patterson Oil argues it has stated a claim for breach of the implied warranty because "Verifone's Limited Warranty is unconscionable and fails its essential purpose." [Doc. 21, p.6.]

Verifone argues that because the "essential purpose" doctrine applies a limitation of remedies and not to a waiver of an implied warranty, Patterson Oil's claim fails.

According to U.C.C. § 2-719, which has been adopted by Missouri, "[t]he seller in all cases is free to disclaim warranties in the manner provided in Section 2-316." Mo. Rev. Stat. § 400.2-719 Comment 3 (1978). Although Missouri courts have not interpreted this clause, other jurisdictions have read its language to distinguish between a remedy limitation, which can fail of

11

its essential purpose, and a valid warranty disclaimer, which cannot. *See Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 203 (E.D.N.Y. 2010) ("the comments to the U.C.C. itself make it clear that section 2–719 does not diminish the ability of sellers to disclaim warranties"). This reading is consistent with the structure of the U.C.C. As noted in *Ritchie Enterprises v. Honeywell Bull, Inc.*, 730 F. Supp. 1041 (D. Kan. 1990), there is a "distinction made in the Code between disclaimers of warranties (2–316) and limitations of remedies (2–719)," and "[t]hough related, these concepts are different in that disclaimers attempt to limit the circumstances of liability while remedy limitations restrict the buyer to certain forms of relief." *Id.* at 1047.

Furthermore, while *Givan v. Mack Truck, Inc*., 569 S.W.2d 243 (Mo. Ct. App. 1978) has established that consequential damage disclaimers may be abrogated in Missouri when a remedy limitation fails of its essential purpose, *Shatterproof Glass*, 758 F.2d at 272, *Givan*'s reasoning does not extend to the disclaimer of other warranties. In fact, the *Givan* court, despite finding that the express warranty remedy failed of its essential purpose, treated the implied warranty of merchantability as a separate issue and did not rule whether that disclaimer had been abrogated. *Givan*, 569 S.W.2d at 249.

Accordingly, Patterson Oil has not stated a claim for breach of the implied warranty of merchantability on the theory that Verifone's express warranty remedies have failed their essential purpose.

However, based on the arguments made by Verifone, the Court cannot say Patterson Oil fails to state a claim on the basis of unconscionability. Under Missouri law, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of

12

the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Mo. Rev. Stat. § 400.2-302(1). This broad provision can apply to warranty disclaimers. *See Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.*, 597 S.W.2d 624, 634 (Mo. Ct. App. 1979) (applying Section 2-302(1) to a disclaimer of the implied warranty of merchantability). Because this is a fact-intensive inquiry based on evidence, it is premature to address the issue at this stage of the litigation.

Verifone's Motion to Dismiss Count II is GRANTED as to Patterson Oil's failure of essential purpose argument and otherwise DENIED.

### D. Count IV: Fraudulent Misrepresentation and Omissions

Verifone argues that Patterson Oil's fraudulent misrepresentation claim must fail because Patterson Oil has not plead the claim with specificity and "has not relied on any specific misrepresentation." [Doc. 12, p. 12.] Alternatively, Verifone argues that the fraud claim is barred by the economic loss doctrine.

To prove a claim for fraud in Missouri, a plaintiff must show:

> (1) a false material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the statement; (5) the hearer's reliance on its truth, and the right to rely thereon; and (6) proximate injury.

*Constance v. B.B.C. Dev. Co.*, 25 S.W.3d 571, 580 (Mo. Ct. App. 2000) (*citing Ringstreet Northcrest, Inc. v. Bisanz*, 890 S.W.2d 713, 720 (Mo. Ct. App. 1995)).

The fifth prong of this inquiry, reliance, "[g]enerally . . . is an issue of fact for the jury to decide." *Renaissance Leasing*, 322 S.W.3d at 132 (*citing Monsanto Chemical Works v. American Zinc, Lead & Smelting Co.,* 253 S.W. 1006, 1010 (Mo. 1923)). Yet according to

Verifone, Patterson Oil has not plead any facts indicating that it relied on, or even knew about, an alleged Verifone misrepresentation. Patterson Oil responds that Verifone's misrepresentation was in the form of an omission—a fraudulent nondisclosure—and thus reliance can be inferred where the defendant has a duty to disclose.

Fraudulent nondisclosure is "based on the misrepresentation of a material fact by silence." *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (Mo. Ct. App. 2009) (*citing Kansas City Downtown Minority Dev. Corp. v. Corrigan Assocs. Ltd. P'ship*, 868 S.W.2d 210, 219 (Mo. Ct. App. 1994)). In these cases, a plaintiff must prove the same six elements of fraud. *Id*. However, "before silence can amount to a representation upon which another party may rely, there must be a duty to speak." *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. 1993) (*citing Taylor v. Western Casualty & Surety*, *Co*., 523 S.W.2d 582, 586 (Mo. Ct. App. 1975)). *See also Hess v. Chase Manhattan Bank, USA, N.A*., 220 S.W.3d 758, 765-66 (Mo. 2007) (A party's silence can constitute fraudulent nondisclosure "where the law imposes a duty to speak.")

The dispositive question is therefore whether Verifone was under a duty to speak regarding the V910's alleged defects. A duty to speak arises when "there is a relationship of trust and confidence between the parties or where one of the parties has superior knowledge not within the fair and reasonable reach of the other party." *Zubres Radiology*, 276 S.W.3d at 340. Patterson Oil does not claim that a relationship of trust and confidence existed between the Parties. Rather, it argues that Verifone had superior knowledge of the problem not within Patterson Oil's reasonable reach. Patterson Oil offers factual allegations demonstrating that Verifone designed and manufactured the V910, possessed information pertaining to the functioning of the product, had reason to know that the product was defective, and that Patterson

14

Oil could not have discovered these defects upon inspection because they were not apparent. *See* [Doc. 1, pp. 13-17, ¶¶ 60-74.]

These allegations are sufficient at the pleading stage. Whether one party has superior knowledge within the reasonable investigative reach of the other is a factual question that, if plead, cannot be adjudicated on a motion to dismiss. *Hess*, 220 S.W.3d at 766 ("[W]hat type of investigation [is] reasonable is by its nature normally a factual inquiry and, thus, a jury question."); *Ringstreet Northcrest*, 890 S.W.2d at 720) (whether superior knowledge creates a duty to disclose "must be determined on the facts of the particular case"). The allegations are also sufficient to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) because Patterson Oil has plead specific defects, who had superior knowledge of these defects, and why Patterson Oil did not have fair access to the same knowledge.

Verifone argues in the alternative that Patterson Oil's fraudulent misrepresentation claim is barred by Missouri's economic loss doctrine. The economic loss doctrine "prohibits a cause of action in tort where losses are purely economic." *Rockport Digital Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198 (8th Cir. 1995). When the loss is purely economic, purchasers of a product may not pursue tort claims for damage to the purchased items alone. *Sharp Bros. Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. banc. 1986) (denying recovery in tort where "where the only damage is to the product sold"). Patterson Oil does not dispute that its losses are purely economic here.

Nevertheless, claims that the plaintiff was fraudulently induced to enter the contract are widely interpreted to present an exception to the economic loss doctrine. *See AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998) ("A fraud claim independent of the contract is actionable."). *See also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d

15

407 (Tex. 2011); *Vukovich v. Haifa, Inc.*, 2007 WL 2596547 (D.N.J. 2007); *Kraft Co., Inc. v. J & H Marsh & McLennan of Florida, Inc.*, 2006 WL 1876995 (M.D. Fla. 2006); *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205 (2005) (all recognizing fraudulent inducement as an exception to the economic loss doctrine). According to Verifone, Patterson Oil has not plead a claim for fraudulent inducement, and even if it has, the economic loss doctrine still applies because "the only misrepresentation by [Verifone] concerns the quality or character of the goods sold," inherently a contractual claim. [Doc. 29, p. 8] (*quoting Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 885 (8th Cir. 2000).

*Marvin Lumber* makes the above statement when distinguishing between two sides of a "difficult" to draw limitation: one, representations about the quality or character of the goods sold, when not separate from the underlying contract, and two, fraud in the inducement, which occurs "necessarily prior to the contract" and "is independent of the contract." *Marvin Lumber*, 223 F.3d at 885. Claims about the quality of goods sold may therefore fall within the fraudulent inducement exception if they are nevertheless independent of the contract formed. As explained in *R.W. Murray, Co. v. Shatterproof Glass Corp.*, 697 F.2d 818 (8th Cir. 1983), "claims based on misrepresentation or fraud are distinct from and contain different elements than claims grounded on breach of warranty or contract," but "under Missouri law the same set of operative facts may give rise to different causes of action." *Id.* at 831. The *Shatterproof Glass* court proceeded to deny a motion to dismiss plaintiff's fraudulent inducement claim because the plaintiff's pleadings, which describe representations made prior to contract formation, were sufficient. *Id.*

Patterson Oil has plead that Verifone had reason to know about significant problems with the products and the problems could not timely be known by Patterson Oil. Patterson Oil also suggests it would not have entered into the contract, had it known of the defects. Arguably, this

16

claim is based on conduct the preceded the formation of the contract. Given the stage of the litigation it is premature to dismiss Patterson Oil's fraudulent omission claim.

Verifone's Motion to Dismiss Count IV is DENIED.

### E. Count V: Unjust Enrichment

Verifone argues that Patterson Oil's claim for unjust enrichment fails because it is premised on the existence of a valid contract.

Under Missouri law, to state a claim for unjust enrichment, a plaintiff must show that: (1) the defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it would be unjust to allow the defendant to retain the benefit. *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Center,* 280 S.W.3d 678, 697 (Mo. Ct. App. 2009).

An unjust enrichment claim is unavailable when the alleged benefit conferred is the subject matter of a contract. *Dubinsky v. Mermart LLC*, 2009 WL 1011503, *5 (E.D. Mo. Apr. 15, 2009). *See also Speaks Family Legacy Chapels, Inc. v. Nat'l Heritage Enterprises, Inc.*, 2009 WL 2391769, at *4 (W.D. Mo. Aug. 3, 2009) (Plaintiffs failed to state a claim of unjust enrichment where they alleged they "conferred a benefit upon…Defendants in the form of pre-need contract payments;" such claim cannot be premised on a contract). Here, Patterson Oil premised its unjust enrichment claim, in part, on Verifone's violation of the express warranty. [Doc. 1, pp. 36, ¶ 171.] The claim therefore fails because any benefit conferred is the subject matter of a contract.

Patterson Oil argues that it plead its unjust enrichment claim "in the alternative in the event that the Limited Warranty is invalid or unenforceable," [Doc. 21, p. 15], but that does not preclude dismissal. A plaintiff is "certainly entitled to bring an unjust enrichment claim as an

alternative ground for relief." *Dubinsky*, 2009 WL 1011503 at *5 (*quoting Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. Ct. App. 2008)). But here Patterson Oil's unjust enrichment claim is based in part on the warranty. It alleges that payments made to Verifone "were given with the expectation that the V910s would perform as represented and warranted." [Doc. 1, pp. 36, ¶ 171.] Thus, the unjust enrichment claim arises out of the express warranty contract and must be dismissed. *See Dubinsky*, 2009 WL 1011503 at *5 (dismissing unjust enrichment claim plead in the "alternative" where the plaintiffs requested that they be awarded the interest payments due to them "but for the breach of contract" by defendant).

Count V for unjust enrichment is DISMISSED with prejudice.

### III. Conclusion

Defendant Verifone, Inc.'s Motion to Dismiss [Doc. 11] is granted in part and denied in part as follows:

- The motion is GRANTED with respect to Count V (Unjust Enrichment) and to the portion of Count II (Breach of Implied Warranty of Merchantability) regarding the failure of essential purpose claim.

- The motion is DENIED with respect to Count I (Breach of Express Warranty), Count III (Failure of Essential Purpose), Count IV (Fraudulent Misrepresentation and Omissions), and the portion of Count II (Breach of Implied Warranty of Merchantability) regarding the unconscionability claim.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: October 19, 2015
Jefferson City, Missouri